UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CITIZENS BANK, N.A., <br> *Plaintiff*, <br><br> v. <br><br> THE MORTGAGE LINK, INC. <br> *Defendant*. | C.A. No. 1:25-cv-00444 |

## COMPLAINT

Plaintiff Citizens Bank, N.A. ("Citizens"), as and for its Complaint against Defendant The Mortgage Link, Inc. ("Mortgage Link"), alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Citizens is a national banking association organized and existing under the National Bank Act, with its headquarters located in Providence, Rhode Island.

2. Mortgage Link is a foreign corporation headquartered in Maryland.

3. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1391, as well as because the parties' contract contains a Rhode Island forum-selection clause that waives objection to venue.

### BACKGROUND FACTS

*OVERVIEW OF THE CORRESPONDENT LENDING PROCESS*

5. Citizens is in the business of purchasing closed residential mortgage loans from approved lenders, known as "correspondent" lenders, and reselling those loans to the Federal Home Loan Mortgage Corporation ("FHLMC," colloquially referred to as "Freddie Mac"), the

1

Federal National Mortgage Association ("FNMA," colloquially referred to as "Fannie Mae"), and other investors in the secondary mortgage market. Often, Citizens will retain the servicing rights over the loan after reselling it to FHLMC, FNMA, or another similar investor.

6. In order to sell a mortgage loan to FHLMC, FNMA, or another similar investor, the loan must meet stringent requirements that are set forth in various agreements, manuals, and other documentation.

7. Secondary investors like FHLMC, however, sometimes unknowingly purchase mortgage loans that were not actually eligible to be purchased. If a secondary investor like FHLMC subsequently discovers that it purchased an ineligible mortgage loan, it will require the seller to repurchase the loan. In turn, the seller will often require the correspondent lender to repurchase the loan from the seller. These repurchase obligations are set forth in the underlying agreements to purchase mortgage loans.

## THE CLPA

8. Mortgage Link is engaged in the business of banking and mortgage lending, which includes, *inter alia*, the origination, funding, and sale of residential mortgage loans.

9. On or about May 10, 2019, Citizens and Mortgage Link entered into a Correspondent Loan Purchase Agreement ("CLPA"), pursuant to which Mortgage Link agreed to offer to sell certain Mortgage Loans (defined in Section 1 of the CLPA) and related servicing rights to Citizens for resale on the secondary market to FHLMC, FNMA, and other similar investors. A true and accurate copy of the CLPA is attached as **Exhibit A**.

### The Mortgage Loan Repurchase Provisions

10. Specifically, Mortgage Link offered to sell Citizens Mortgage Loans that, *inter alia*, were "originated, delivered and serviced in accordance with [FHLMC] Guides, the

[Citizens] Manual, Applicable Requirements [as defined in Section 1 of the CLPA], and any additional [FHLMC] and [Citizens] conditions." Ex. A § 2.

11. Mortgage Link and Citizens agreed that each Mortgage Loan would be purchased and sold "subject to the terms and conditions of [the CLPA], the [Citizens] Manual, and any other Contract Documents [defined in Section 1 of the CLPA]." Ex. A § 3.

12. For each Mortgage Loan that Mortgage Link sells to Citizens, Mortgage Link makes certain representations and warranties in Section 6 of the CLPA, including, *inter alia*:

   a. "There is no fact or circumstance with respect to the Mortgage Loan that would cause . . . [FHLMC] to demand repurchase of a Mortgage Loan";

   b. The "Mortgage Loan complies with [FHLMC] Guide";

   c. "Each Mortgage Loan was originated and serviced in compliance with the [FHLMC] Guide, the [Citizens] Manual and applicable law, including consumer protection statutes and regulations."

   d. "None of [Mortgage Link's] statements to [Citizens] contain any untrue or incomplete material fact."

13. Under Section 6 of the CLPA, Citizens' rights and remedies with respect to Mortgage Link's breach of any representation and warranty in the CLPA survive the purchase and delivery of the subject Mortgage Loan.

14. Pursuant to Section 8 of the CLPA, Mortgage Link agreed to repurchase the Mortgage Loan from Citizens, in the event that Citizens determined, in its sole discretion that, *inter alia*:

    a. "Any representation or warranty of [Mortgage Link] with respect to the Mortgage Loan is determined by [Citizens] to have been false or any other Event of Default with respect to the Mortgage Loan shall have occurred";

    b. "[Mortgage Link] fails to deliver to [Citizens] the documentation with respect to the Mortgage Loan required by [Citizens] under the Contract Documents within the time period established by [Citizens]";

    c. "A post-closing quality control review by . . . [Citizens] . . . discloses any fraud or misrepresentation."

15. Within 30 days after Citizens demands repurchase of a Mortgage Loan under Section 8, Mortgage Link must repurchase the Loan at the Repurchase Price (as defined in Section 1 of the CLPA), which includes, *inter alia*, the outstanding principal balance, interest thereon, advances for escrow accounts, foreclosure costs, reasonable attorneys' fees, and costs incurred by Citizens in connection with the Mortgage Loan.

16. Pursuant to Section 10 of the CLPA, "[i]n addition to [Mortgage Link's] repurchase obligation," Mortgage Link also agrees to indemnify Citizens and hold Citizens harmless from and against, *inter alia*, "any and all losses, liabilities, penalties, damages, or other harm or injury" that Citizens incurs, "including reasonable attorneys' fees and court costs arising out of":

    a. "Any misrepresentation made by [Mortgage Link] in [the CLPA] or any information provided to [Citizens]";

    b. "Any breach by [Mortgage Link] of any of [Mortgage Link's] representations, warranties, or obligations under [the CLPA] or any of the Contract Documents";

    c. "Any act, or failure to act or perform any term, or obligation of [Mortgage Link] under [the CLPA] or any of the Contract Documents; or"

    d. "Any failure of [Mortgage Link] to comply with any Applicable Requirement" [as defined in Section 1 of the CLPA]."

17. In addition to the indemnification obligation in Section 10 of the CLPA, Mortgage Link agreed in Section 22 that if it breaches or fails to perform under the CLPA, it "shall pay all costs and expenses, including court costs and reasonable attorneys' fees incurred" by Citizens.

### THE SAGNIA LOAN

18. On or about August 3, 2022, Mortgage Link originated a Mortgage Loan to Kekoye Sagnia (the "Sagnia Loan") and took a security interest in Sagnia's real property located at 8508 Tindal Springs Drive, Montgomery Village, Maryland (the "Property").

19. Mortgage Link sold the Sagnia Loan to Citizens pursuant to the CLPA and subject to the representations and warranties contained in the CLPA.

20. After Citizens purchased the Sagnia Loan from Mortgage Link, Citizens sold the Sagnia Loan to FHLMC.

21. In early 2025, Citizens received notice from FHLMC that FHLMC had performed an audit of the Sagnia Loan and discovered certain deficiencies that could make the loan unqualified for purchase by FHLMC. Specifically, FHLMC explained that the loan did not meet FHLMC guidelines because the loan originator (i.e., Mortgage Link) did not provide evidence that certain of the borrower's other debts had been paid off.

22. On February 12, 2025, Citizens advised Mortgage Link of FHLMC's audit findings and requested that Mortgage Link respond to FHLMC's concerns. Citizens warned

Mortgage Link that a failure to satisfactorily address FHLMC's concerns could lead FHLMC to demand that the loan be repurchased. Mortgage Link did not response to Citizens' request or provide a response despite follow up requests by Citizens.

23. On March 7, 2025, FHLMC demanded that Citizens repurchase the Sagnia Loan based on the deficiencies identified in the audit.

24. Citizens repurchased the Sagnia Loan from FHLMC.

25. On March 25, 2025, Mortgage Link advised Citizens that the deficiencies in the Sagnia Loan were "incurable" and indicated that Mortgage Link expected Citizens would send Mortgage Link a repurchase demand.

26. On July 21, 2025, Citizens issued a formal demand to Mortgage Link for repurchase of the Sagnia Loan in accordance with the CLPA.

27. Mortgage Link, however, refused to repurchase the Sagnia Loan, in breach of its obligations under the CLPA.

28. As of August 1, 2025, the Repurchase Price for the Sagnia Loan was $448,839.35, exclusive of Citizens costs and attorneys' fees in bringing this action.

## COUNT I – BREACH OF CONTRACT

29. Citizens repeats and realleges the allegations set forth in Paragraphs 1 through 28 as if fully set forth herein.

30. The CLPA constitutes a valid and enforceable contract supported by valuable consideration in the form of promises and obligations mutually exchanged and imposed.

31. Citizens and Mortgage Link are bound by the terms of the CLPA.

32. Mortgage Link breached the representations and warranties in the CLPA when it sold the Sagnia Loan to Citizens, including, *inter alia*, by falsely representing and warranting

that no fact or circumstance regarding the Sagnia Loan would entitle FHLMC to demand that Citizens repurchase the Loan, and the Sagnia Loan complies with FHLMC's Guide and was originated and serviced in compliance with that Guide.

33. As a result of Mortgage Link's breach of representations and warranties, FHLMC would not purchase the Sagnia Loan.

34. Mortgage Link breached the CLPA by failing to repurchase the Sagnia Loan from Citizens upon Citizens' written demand.

35. As a result of Mortgage Link's breach of its representations, warranties, and repurchase obligation under the CLPA, Citizens has suffered, and continues to suffer, damages in an amount to be determined at trial, but in an amount not less than the Repurchase Price at the time of trial, plus costs and attorneys' fees.

## COUNT II – CONTRACTUAL INDEMNIFICATION, COSTS, EXPENSES, AND ATTORNEYS' FEES

36. Citizens repeats and realleges the allegations set forth in Paragraphs 1 through 35 as if fully set forth herein.

37. The CLPA constitutes a valid and enforceable contract supported by valuable consideration in the form of promises and obligations mutually exchanged and imposed.

38. Citizens and Mortgage Link are bound by the terms of the CLPA.

39. Section 10 of the CLPA obligates Mortgage Link to indemnify Citizens and hold Citizens harmless against all losses, liabilities, penalties, damages, or other harm or injury, including costs and reasonable attorneys' fees, arising out of, *inter alia*, Mortgage Link's misrepresentations relating to the Sagnia Loan and Mortgage Link's breach of its representations, warranties, and repurchase obligation under the CLPA.

40. Section 22 of the CLPA obligates Mortgage Link to pay Citizens' costs, expenses, and attorneys' fees in the event that Mortgage Link breaches the CLPA.

41. Mortgage Link breached its indemnity obligations under Section 10 of the CLPA when it made false representations and warranties with respect to its sale of the Sagnia Loan and failed to repurchase such Loan (each of which constitute additional breaches of the CLPA).

42. As a result of Mortgage Link's breaches, Citizens has incurred and continues to incur costs, attorneys' fees, and expenses in connection with the Sagnia Loan and this lawsuit, in an amount to be proven at trial, for which Mortgage Link is obligated to reimburse Citizens under Sections 10 and/or Section 22 of the CLPA.

## PRAYER FOR RELIEF

**WHEREFORE**, Citizens demands judgment in its favor and against Mortgage Link as follows:

1. Awarding to Citizens all damages arising from and relating to Mortgage Link's breach of contract, in an amount to be determined at trial, but not less than the Repurchase Price of the Sagnia Loan;

2. Awarding to Citizens all recoverable pre- and post-judgment interest at the maximum rate allowed by law;

3. Awarding to Citizens all attorneys' fees and costs incurred in bringing this action as expressly provided in the CLPA;

4. Requiring Mortgage Link to indemnify Citizens in and against any and all losses, liabilities, penalties, damages, any other harm that has occurred, inclusive of attorneys' fees and court costs, arising out of all of Mortgage Link's breaches of the CLPA; and

5. For such other and further relief that the Court deems fair, just, and equitable.

Dated: September 8, 2025

Plaintiff,
CITIZENS BANK, N.A.
By its attorneys,

/s/ *Brenna A. Force*
Geoffrey W. Millsom (#6483)
Brenna A. Force (#8555)
Adler Pollock & Sheehan P.C.
100 Westminster Street, 16th Floor
Providence, RI 02903
Tel: (401) 274-7200
Fax: (401) 351-4607
gmillsom@apslaw.com
bforce@apslaw.com