UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CITIZENS BANK, N.A.,
    *Plaintiff*,

            v.

THE MORTGAGE LINK, INC.,
    *Defendant*.

Case No. 1:25-cv-00444

**DEFENDANT THE MORTGAGE LINK, INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

Defendant The Mortgage Link, Inc. ("Mortgage Link"), by and through its undersigned counsel, hereby answers the Complaint (ECF No. 1) of Plaintiff Citizens Bank, N.A. ("Citizens"), asserts its affirmative defenses, and pleads its Counterclaim against Citizens, as follows. Except as expressly and specifically admitted herein, Mortgage Link denies each and every allegation in the Complaint. The headings used below track the headings in the Complaint and are reproduced solely for the convenience of the Court and the parties; Mortgage Link does not admit any allegation embedded in any heading.

**ANSWER**

**PARTIES, JURISDICTION, AND VENUE**

1. Admitted.

2. Admitted that Mortgage Link is a corporation organized under the laws of the State of Maryland with its principal place of business in Maryland. Except as expressly admitted, denied.

3. Admitted that this Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) and that the amount in controversy alleged exceeds $75,000 exclusive of interest and costs. Mortgage Link denies that Citizens is entitled to any recovery.

1

4. Admitted that venue is proper in this Court. The balance of the allegations purports to characterize the parties' agreement, which speaks for itself; Mortgage Link refers the Court to that agreement for its complete terms and denies any inconsistent characterization.

## BACKGROUND FACTS

### Overview of the Correspondent Lending Process

5. Admitted upon information and belief.

6. Admitted upon information and belief that loans sold to FHLMC, FNMA, and similar investors must satisfy applicable requirements. The referenced requirements are set forth in written materials that speak for themselves, and Mortgage Link denies any allegation inconsistent therewith.

7. Admitted upon information and belief as a general description of the secondary-mortgage-market process. Mortgage Link denies any implication that it had any obligation to repurchase the loan at issue in this action.

### The CLPA

8. Admitted.

9. Admitted that on or about May 10, 2019, Citizens and Mortgage Link entered into a Correspondent Loan Purchase Agreement (the "CLPA"), and that a copy is attached to the Complaint as Exhibit A. The CLPA speaks for itself, and Mortgage Link denies any allegation inconsistent with, or that mischaracterizes, its terms.

### The Mortgage Loan Repurchase Provisions

10. The allegations in this Paragraph purport to characterize, quote from, or describe the CLPA, a written instrument that speaks for itself. Mortgage Link respectfully refers the Court to the CLPA for its complete and accurate terms, and denies any allegation inconsistent with, or that mischaracterizes, that instrument.

11. The allegations in this Paragraph purport to characterize, quote from, or describe the CLPA, a written instrument that speaks for itself. Mortgage Link respectfully refers the Court

2

to the CLPA for its complete and accurate terms, and denies any allegation inconsistent with, or that mischaracterizes, that instrument.

12. The allegations in this Paragraph purport to characterize, quote from, or describe the CLPA, a written instrument that speaks for itself. Mortgage Link respectfully refers the Court to the CLPA for its complete and accurate terms, and denies any allegation inconsistent with, or that mischaracterizes, that instrument.

13. The allegations in this Paragraph purport to characterize, quote from, or describe the CLPA, a written instrument that speaks for itself. Mortgage Link respectfully refers the Court to the CLPA for its complete and accurate terms, and denies any allegation inconsistent with, or that mischaracterizes, that instrument.

14. The allegations in this Paragraph purport to characterize, quote from, or describe the CLPA, a written instrument that speaks for itself. Mortgage Link respectfully refers the Court to the CLPA for its complete and accurate terms, and denies any allegation inconsistent with, or that mischaracterizes, that instrument.

15. The allegations in this Paragraph purport to characterize, quote from, or describe the CLPA, a written instrument that speaks for itself. Mortgage Link respectfully refers the Court to the CLPA for its complete and accurate terms, and denies any allegation inconsistent with, or that mischaracterizes, that instrument.

16. The allegations in this Paragraph purport to characterize, quote from, or describe the CLPA, a written instrument that speaks for itself. Mortgage Link respectfully refers the Court to the CLPA for its complete and accurate terms, and denies any allegation inconsistent with, or that mischaracterizes, that instrument.

17. The allegations in this Paragraph purport to characterize, quote from, or describe the CLPA, a written instrument that speaks for itself. Mortgage Link respectfully refers the Court to the CLPA for its complete and accurate terms, and denies any allegation inconsistent with, or that mischaracterizes, that instrument.

**The Sagnia Loan**

18.     Admitted that on or about August 3, 2022, Mortgage Link originated a residential mortgage loan to Kekoye Sagnia (the "Sagnia Loan") secured by an interest in the real property located at 8508 Tindal Springs Drive, Montgomery Village, Maryland (the "Property"). Except as expressly admitted, denied.

19.     Admitted that Mortgage Link sold the Sagnia Loan to Citizens. To the extent this Paragraph purports to characterize the representations and warranties in the CLPA, that instrument speaks for itself, and Mortgage Link denies any inconsistent characterization.

20.     Admitted upon information and belief that, after purchasing the Sagnia Loan, Citizens sold it to FHLMC.

21.     Mortgage Link admits that it received a communication from Citizens referring to an FHLMC audit of the Sagnia Loan. Mortgage Link lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning FHLMC's internal audit, findings, or communications, and on that basis denies them. Mortgage Link denies that the Sagnia Loan, as originated and sold by Mortgage Link, failed to comply with any applicable requirement, and denies any implication of wrongdoing by Mortgage Link.

22.     Admitted that Citizens sent Mortgage Link a communication on or about February 12, 2025; that communication speaks for itself, and Mortgage Link refers the Court to it for its complete terms. Mortgage Link denies the remaining allegations of this Paragraph, including any characterization that Mortgage Link failed to respond or that any such failure breached any obligation.

23.     Admitted upon information and belief that FHLMC issued a repurchase demand to Citizens on or about March 7, 2025. Mortgage Link notes that, as set forth in its Counterclaim below, Citizens had already unilaterally and materially modified the Sagnia Loan months before this demand. Except as expressly admitted, denied.

24.     Admitted upon information and belief.

25.     Admitted that Mortgage Link communicated with Citizens on or about March 25, 2025; that communication speaks for itself, and Mortgage Link refers the Court to it for its

complete terms. Mortgage Link denies any characterization of that communication inconsistent with its actual contents, and denies any implication that the Sagnia Loan as originated and sold by Mortgage Link was deficient.

26.     Admitted that Citizens transmitted to Mortgage Link a written repurchase demand on or about July 21, 2025. That demand speaks for itself. Mortgage Link denies that the demand was valid or that Mortgage Link had any obligation to comply with it.

27.     Admitted that Mortgage Link declined to repurchase the Sagnia Loan. Mortgage Link denies that its declination breached the CLPA or any other obligation, and denies the remaining allegations of this Paragraph.

28.     Denied. Mortgage Link denies that any "Repurchase Price" is owed, denies the amount alleged, and lacks knowledge or information sufficient to form a belief as to the truth of Citizens' calculation, and on that basis denies it.

<strong>COUNT I – BREACH OF CONTRACT</strong>

29.     Mortgage Link repeats and incorporates by reference its responses to Paragraphs 1 through 28 as if fully set forth herein.

30.     Admitted that the CLPA constitutes a valid and enforceable contract.

31.     Admitted that Citizens and Mortgage Link are parties to, and bound by the terms of, the CLPA.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied.

<strong>COUNT II – CONTRACTUAL INDEMNIFICATION, COSTS, EXPENSES, AND ATTORNEYS' FEES</strong>

36.     Mortgage Link repeats and incorporates by reference its responses to Paragraphs 1 through 35 as if fully set forth herein.

37.     Admitted that the CLPA constitutes a valid and enforceable contract.

38.     Admitted that Citizens and Mortgage Link are parties to, and bound by the terms of, the CLPA.

39.     The allegations in this Paragraph purport to characterize, quote from, or describe the CLPA, a written instrument that speaks for itself. Mortgage Link respectfully refers the Court to the CLPA for its complete and accurate terms, and denies any allegation inconsistent with, or that mischaracterizes, that instrument. Mortgage Link denies that it owes Citizens any indemnification.

40.     The allegations in this Paragraph purport to characterize, quote from, or describe the CLPA, a written instrument that speaks for itself. Mortgage Link respectfully refers the Court to the CLPA for its complete and accurate terms, and denies any allegation inconsistent with, or that mischaracterizes, that instrument. Mortgage Link denies that it owes Citizens any costs, expenses, or attorneys' fees.

41.     Denied.

42.     Denied. Mortgage Link further lacks knowledge or information sufficient to form a belief as to the costs, fees, or expenses Citizens alleges it has incurred, and on that basis denies them, and denies that Mortgage Link is obligated to reimburse any such amounts.

## RESPONSE TO PRAYER FOR RELIEF

The remainder of the Complaint consists of Citizens' Prayer for Relief, to which no response is required. To the extent a response is required, Mortgage Link denies that Citizens is entitled to the relief requested in subparagraphs 1 through 5 of the Prayer for Relief, or to any relief whatsoever.

## AFFIRMATIVE DEFENSES

Without assuming any burden of proof it would not otherwise bear and reserving the right to amend or supplement these defenses as discovery proceeds, Mortgage Link asserts the following affirmative and other defenses to the Complaint.

### FIRST AFFIRMATIVE DEFENSE (Failure to State a Claim)

The Complaint fails, in whole or in part, to state a claim upon which relief can be granted, including because Citizens failed to plead a recoverable, non-speculative loss proximately caused by any conduct of Mortgage Link.

### SECOND AFFIRMATIVE DEFENSE (Material Alteration – The Loan Tendered Is Not the "Mortgage Loan" Sold)

Citizens' claims are barred, in whole or in part, because after purchasing the Sagnia Loan, Citizens unilaterally and materially altered it, including by extending the repayment term from thirty to forty years, recording a "new mortgage" balance, and releasing the borrower from all personal liability, thereby creating a fundamentally different, non-recourse financial instrument that is not the "Mortgage Loan" Mortgage Link originated and sold under the CLPA. There can be no "repurchase" of a loan Mortgage Link never sold.

### THIRD AFFIRMATIVE DEFENSE (Prior Material Breach / First Material Breach)

Citizens' claims are barred, in whole or in part, by Citizens' own prior material breaches of the CLPA and of the servicing obligations it retained, including by gratuitously and improperly discharging the borrower's personal liability without authorization, which excused any performance otherwise owed by Mortgage Link.

### FOURTH AFFIRMATIVE DEFENSE (Discharge / Excuse of Obligation)

Any obligation Mortgage Link might otherwise have had to repurchase the Sagnia Loan was discharged, excused, or rendered impossible by Citizens' own post-purchase conduct, which materially and adversely altered the loan and increased its risk profile.

7

**FIFTH AFFIRMATIVE DEFENSE (Failure of Conditions Precedent)**

Citizens' claims are barred, in whole or in part, by the failure of conditions precedent to any repurchase obligation under Section 8 of the CLPA. The loan modification Citizens executed was not made "in conformity with any governmental modification program or settlement with any Agency or governmental entity," and thus falls outside the only modifications the CLPA provides will not affect a repurchase obligation; moreover, Citizens' modification predated FHLMC's repurchase demand.

**SIXTH AFFIRMATIVE DEFENSE (Unclean Hands)**

Citizens' claims, particularly to the extent they seek equitable relief or invoke the equitable remedy of repurchase, are barred by the doctrine of unclean hands, in that Citizens' own inequitable conduct—including its systematic and improper discharge of borrowers' personal obligations—gave rise to the very condition for which it now seeks recovery.

**SEVENTH AFFIRMATIVE DEFENSE (Waiver)**

Citizens' claims are barred, in whole or in part, by waiver, in that Citizens' voluntary and unilateral material modification of the Sagnia Loan relinquished any right it might otherwise have had to demand that Mortgage Link repurchase the loan.

**EIGHTH AFFIRMATIVE DEFENSE (Estoppel)**

Citizens' claims are barred, in whole or in part, by the doctrine of estoppel, in that Citizens, through its own conduct in altering the Sagnia Loan, is estopped from asserting that Mortgage Link must repurchase a loan Citizens itself transformed.

**NINTH AFFIRMATIVE DEFENSE (Failure to Mitigate)**

Citizens' claims for damages are barred or reduced, in whole or in part, by Citizens' failure to mitigate its alleged damages, including by, among other things: (a) releasing the borrower from personal liability and thereby destroying its own recourse against the borrower; (b) failing to pursue or preserve any deficiency or other recourse against the borrower under the Sagnia Loan; (c) unilaterally modifying the loan in a manner that increased its risk and reduced its recoverable

value; and (d) repurchasing the loan from FHLMC, and otherwise resolving FHLMC's demand, for more than Citizens was obligated to pay, if anything, with respect to the Sagnia Loan.

### TENTH AFFIRMATIVE DEFENSE (No Recoverable Damages; Unenforceable Penalty)

Citizens' claims are barred, in whole or in part, because Citizens has suffered no actual, realized, or cognizable loss. The Sagnia Loan is a performing, fully secured obligation, and the "Repurchase Price" is a contractual specific-performance mechanism, not a measure of actual loss; Citizens' attempt to recover the Repurchase Price in the absence of any actual loss operates as an unenforceable penalty.

### ELEVENTH AFFIRMATIVE DEFENSE (Setoff and Recoupment)

Any recovery by Citizens must be reduced or eliminated by way of setoff and recoupment for the damages Citizens caused Mortgage Link through Citizens' own breaches, as set forth in the Counterclaim below.

### TWELFTH AFFIRMATIVE DEFENSE (Proximate Cause / Citizens' Own Conduct)

Any damages allegedly sustained by Citizens were proximately caused by Citizens' own acts and omissions—including its systematic, improper discharge of borrowers' personal obligations—and not by any act or omission of Mortgage Link.

### THIRTEENTH AFFIRMATIVE DEFENSE (Speculative Damages)

Citizens' alleged damages are speculative, uncertain, and not recoverable as a matter of law.

### FOURTEENTH AFFIRMATIVE DEFENSE (Election and Exclusivity of Remedy)

To the extent Citizens alleges that Mortgage Link breached any representation or warranty concerning the Sagnia Loan, Citizens' sole and exclusive remedy under the CLPA was to require repurchase under Section 8. Citizens frustrated and rendered that remedy unavailable through its own unilateral, material modification of the loan, and it may not substitute an alternative or expanded measure of damages for the remedy the CLPA provides.

**FIFTEENTH AFFIRMATIVE DEFENSE (No Material Defect; Damages Limited to Actual Loss)**

Citizens' claims are barred or limited because the alleged deficiency in the Sagnia Loan was not material, did not render the loan "defective," and did not materially and adversely affect the value of the loan or the interests of any purchaser or investor in it. Any recovery by Citizens is in all events limited to the losses, if any, that Citizens actually incurred—which are none, because the Sagnia Loan remains a performing, fully secured obligation.

**SIXTEENTH AFFIRMATIVE DEFENSE (Failure of Proof of Indemnifiable Loss)**

Citizens' claims, and in particular its claim for contractual indemnification, fail because Citizens cannot establish, among other things: (a) that it was legally obligated to repurchase the Sagnia Loan from FHLMC; (b) that any amount was in fact paid by Citizens attributable to the Sagnia Loan; (c) that any such payment was necessitated by an origination defect for which Mortgage Link was responsible, as opposed to Citizens' own post-purchase modification of the loan; or (d) that the "Repurchase Price" Citizens seeks corresponds to any amount Citizens actually and necessarily paid with respect to the Sagnia Loan.

**SEVENTEENTH AFFIRMATIVE DEFENSE (Indemnitee's Own Conduct)**

Citizens' claim for contractual indemnification is barred, in whole or in part, because the losses for which Citizens seeks indemnity arose from Citizens' own conduct, including its improper and unauthorized discharge of the borrower's personal liability and its unilateral, material modification of the Sagnia Loan. The indemnification provisions of the CLPA do not clearly and unequivocally extend to losses caused by Citizens' own acts, omissions, or fault, and they will not be construed to do so.

**EIGHTEENTH AFFIRMATIVE DEFENSE (Voluntary Payment)**

Citizens' claims are barred, in whole or in part, by the voluntary payment doctrine, to the extent Citizens voluntarily repurchased the Sagnia Loan from FHLMC, or made any other payment, that it was under no legal obligation to make.

**NINETEENTH AFFIRMATIVE DEFENSE (Failure to Notify or Involve Mortgage Link)**

Citizens' claims are barred or reduced, in whole or in part, because Citizens failed to notify Mortgage Link of, or to involve Mortgage Link in, its handling of the Sagnia Loan before Citizens unilaterally modified the loan, released the borrower from personal liability, and repurchased the loan from FHLMC, thereby depriving Mortgage Link of any opportunity to protect its interests.

**TWENTIETH AFFIRMATIVE DEFENSE (Superseding and Intervening Cause)**

Any loss allegedly sustained by Citizens was caused by superseding and intervening acts and omissions outside Mortgage Link's control, including Citizens' own unilateral, post-purchase material modification of the Sagnia Loan and its gratuitous discharge of the borrower's personal liability, which broke any causal connection between Mortgage Link's origination of the loan and Citizens' claimed loss.

**TWENTY-FIRST AFFIRMATIVE DEFENSE (Double Recovery and Unjust Enrichment)**

Citizens' claims are barred, in whole or in part, to the extent any recovery would result in an unlawful double recovery or would unjustly enrich Citizens, which continues to hold a performing, fully secured loan, continues to receive payments and interest, and retains the collateral Property, while also seeking the full Repurchase Price from Mortgage Link.

**TWENTY-SECOND AFFIRMATIVE DEFENSE (Reservation of Defenses)**

Mortgage Link presently has insufficient knowledge or information upon which to form a belief as to whether additional, as-yet-unstated defenses are available. Mortgage Link reserves the right to assert additional affirmative defenses that discovery may reveal.


**[counterclaim follows on next page]**

## COUNTERCLAIM

Counterclaim-Plaintiff The Mortgage Link, Inc. ("Mortgage Link"), for its Counterclaim against Counterclaim-Defendant Citizens Bank, N.A. ("Citizens"), alleges as follows. The allegations made on information and belief are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

### NATURE OF THE COUNTERCLAIM

1.      This Counterclaim arises from Citizens' bad-faith effort to shift onto Mortgage Link the consequences of Citizens' own systematic mortgage-servicing failures. For years, Citizens repeatedly and improperly inserted bankruptcy-discharge language, reserved by federal instructions for borrowers who actually received a Chapter 7 discharge, into routine loan modification agreements for borrowers who never filed for bankruptcy, thereby gratuitously releasing those borrowers from personal liability and converting recourse loans into riskier, non-recourse obligations.

2.      Citizens did exactly that to the Sagnia Loan. Months before FHLMC issued any repurchase demand, Citizens unilaterally executed and recorded a loan modification that released the borrower from all personal liability through this recycled discharge language, even though the borrower had never filed for bankruptcy. Having impaired the loan through its own error, Citizens then invoked the repurchase machinery of the CLPA in an attempt to make Mortgage Link, the originator, bear the cost of Citizens' mistake. In doing so, Citizens breached the implied covenant of good faith and fair dealing that inheres in the CLPA.

### PARTIES

3.      Counterclaim-Plaintiff Mortgage Link is a corporation organized under the laws of the State of Maryland with its principal place of business in Maryland. Mortgage Link is engaged in the business of originating, funding, and selling residential mortgage loans.

4.      Counterclaim-Defendant Citizens is a national banking association organized and existing under the National Bank Act, with its principal place of business in Providence, Rhode

Island. Citizens is in the business of purchasing closed residential mortgage loans from correspondent lenders, reselling those loans on the secondary market, and frequently retaining the servicing rights to those loans.

## JURISDICTION AND VENUE

5.     This Court has subject-matter jurisdiction over this Counterclaim under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs, and independently under 28 U.S.C. § 1367(a) because the Counterclaim forms part of the same case or controversy as Citizens' claims.

6.     This Counterclaim is a compulsory counterclaim under Federal Rule of Civil Procedure 13(a), as it arises out of the transaction or occurrence that is the subject matter of Citizens' Complaint.

7.     Venue is proper in this Court, and Citizens has consented to venue and jurisdiction in this District pursuant to the forum-selection provision of the CLPA.

## FACTUAL ALLEGATIONS

### The CLPA and Citizens' Servicing

8.     On or about May 10, 2019, Citizens and Mortgage Link entered into the CLPA, under which Mortgage Link agreed to offer to sell certain closed residential mortgage loans, together with related servicing rights, to Citizens for resale on the secondary market.

9.     Upon purchasing a mortgage loan from Mortgage Link and reselling it on the secondary market, Citizens routinely retained the servicing rights to the loan. As servicer, Citizens administered the loan following its sale, including default servicing, loss mitigation, and the preparation, approval, execution, and recording of any recorded instruments or loan modification agreements.

10.     Mortgage Link had no role in Citizens' servicing of any loan after its sale, and no ability to prevent, review, or correct the unreasonable and improper modifications Citizens made.

**Citizens' Offshoring of Servicing Operations to Infosys BPM**

11.    Upon information and belief, in furtherance of a broad cost-reduction and "digital transformation" initiative, Citizens outsourced and offshored material portions of its mortgage-servicing operations, including loan-modification document preparation and processing, to its India-based business-process partner, Infosys BPM (a unit of Infosys Limited).

12.    Citizens has publicly described its transformation engagement with Infosys, including in an Infosys-published "tale of transformation" titled "Citizens Bank: Cloud-first, resilient, and ready to serve." Upon information and belief, the loan-modification documents at issue, including the modification of the Sagnia Loan, were generated through processes Citizens had delegated to or shared with its Infosys BPM partner.

13.    Upon information and belief, the recorded loan modification instruments were prepared within Citizens' offshored servicing operation and reflect the templated, high-volume, document-generation process Citizens deployed. A small, recurring group of individuals prepared these modifications, each identifying himself or herself on the face of the recorded instrument as having prepared the document on behalf of Citizens at Citizens' servicing address of 10561 Telegraph Road, Glen Allen, Virginia, including Vasu Shivegowda, Prashanth Shivegowda, Sudharsan Reddy Kothapalli, Bhavana Narasareddy Gari, Kudumula Ramesh Reddy, and Bhanupriya Krishna. Upon information and belief, these individuals were not in Glen Allen, Virginia but were instead personnel of, or were furnished by, Citizens' India-based partner Infosys BPM as part of the offshored loan-servicing and document-preparation operation described above.

**The FHFA Form 3179 and the Limited, Authorized Use of Discharge Language**

14.    The Federal Housing Finance Agency ("FHFA"), as conservator for Fannie Mae and Freddie Mac, promulgates instructions governing use of the standard Loan Modification Agreement – Single-Family (Form 3179) (the "FHFA Instructions"). The FHFA Instructions standardize agency loan-modification documentation and specify when particular provisions may be used.

14

15.    The FHFA Instructions strictly limit the use of bankruptcy-discharge language. They provide that lenders "MUST amend the document by inserting" a discharge paragraph "if the borrower previously received a Chapter 7 bankruptcy discharge but did not reaffirm the mortgage debt under applicable law." The authorized discharge paragraph states, in relevant part:

> *Notwithstanding anything to the contrary contained in this Agreement, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. . . . Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.*

16.    By its terms, this language should be used only where the borrower has, in fact, received a Chapter 7 bankruptcy discharge. Where the borrower never filed for bankruptcy and received no discharge, insertion of the language is improper and by its terms releases the borrower from personal liability, eliminating the lender's recourse beyond the collateral property.

17.    Beyond violating the FHFA Instructions, Citizens' insertion of bankruptcy-discharge language into modifications for borrowers with no bankruptcy history was objectively unreasonable and contrary to prudent mortgage servicing practice. No competent servicer gratuitously converts a fully-secured, full-recourse obligation into a non-recourse obligation, eliminating recourse against the borrower for any deficiency, absent a triggering event such as an actual bankruptcy discharge. Such releases carry direct economic consequences: they eliminate recourse against the borrower's other assets and income, and materially increase the credit risk and diminish the value of the loan to any party holding or exposed to it, including Mortgage Link.

18.    Citizens' practice of inserting this language into routine modifications for borrowers with no bankruptcy history was not an isolated misjudgment but a departure from the reasonable and customary servicing practices of prudent mortgage lending institutions. The gratuitous release of a borrower's personal liability absent a bankruptcy discharge or other qualifying event is a readily recognizable departure from prudent servicing conduct, not a defensible exercise of servicer discretion.

**Citizens' Systematic, Improper Discharge of Borrowers' Personal Obligations**

19.    Notwithstanding these clear limitations, Citizens engaged in a systematic and recurring practice of inserting the bankruptcy-discharge language, and otherwise releasing borrowers from personal liability, in routine "flex mod" Form 3179 loan modification agreements for borrowers who had never filed for bankruptcy and had never received any discharge.

20.    This was not an isolated error. Upon information and belief, Citizens repeated this practice across numerous loans, over multiple years, and in multiple jurisdictions. Publicly recorded Form 3179 "Flex Mod" loan modification instruments prepared by Infosys BPM personnel and executed by Citizens applied the same improper discharge language, or otherwise released the borrower from personal liability, to borrowers with no bankruptcy history.

21.    The consistency, repetition, and templated character of these discharges across multiple unrelated loans demonstrate that the practice was the product of Citizens' standardized, high-volume servicing and document-generation operation, not a one-off clerical slip on a single file.

**Citizens' Improper Discharge of the Sagnia Borrower**

22.    On or about August 3, 2022, Mortgage Link originated the Sagnia Loan to Kekoye Sagnia, secured by the Property. The Sagnia Loan, as originated and sold by Mortgage Link, was a full-recourse obligation: the borrower was personally liable for repayment, and any post-foreclosure deficiency would remain the borrower's personal obligation.

23.    Mortgage Link sold the Sagnia Loan to Citizens, which in turn sold it to FHLMC. Citizens retained the servicing rights thereafter.

24.    The Sagnia Loan Modification Agreement was prepared by Vasu Shivegowda at Infosys BPM on behalf of Citizens, was dated November 15, 2024, was executed by a Citizens Vice President on or about January 14, 2025, and was recorded in Montgomery County, Maryland on or about January 17, 2025. Among other things, that modification (a) extended the repayment term from thirty years to forty years; (b) reported a "new mortgage" balance of $441,326.38; and

16

(c) released and discharged the borrower from all personal liability through the FHFA bankruptcy-discharge language quoted above.

25.    The borrower had never filed for bankruptcy and had never received any bankruptcy discharge. Citizens' insertion of the discharge language was therefore wholly improper and gratuitous, and was not required, authorized, or occasioned by any bankruptcy proceeding, any governmental modification program, or any settlement with any agency or governmental entity.

26.    Citizens executed and recorded this modification months before FHLMC issued any repurchase demand to Citizens (which Citizens alleges occurred on or about March 7, 2025). The discharge was thus the product of Citizens' own servicing process, not any external requirement.

27.    By this modification, Citizens unilaterally converted the recourse Sagnia Loan into a non-recourse obligation, eliminated its own recourse against the borrower, materially increased the credit risk of the loan, and transformed it into a financial instrument fundamentally different from the loan Mortgage Link originated and sold.

### Citizens' Attempt to Foist Its Own Error Onto Mortgage Link

28.    Having impaired the Sagnia Loan through its own systematic servicing error, Citizens then invoked the repurchase machinery of the CLPA and demanded that Mortgage Link, the originator repurchase the loan at a "Repurchase Price" approaching half a million dollars.

29.    Citizens' demand seeks to make Mortgage Link bear the financial consequences of Citizens' own misconduct, including a self-inflicted impairment that Mortgage Link could not have caused, prevented, or cured.

30.    As a direct and proximate result of Citizens' conduct, Mortgage Link has been damaged, including by being subjected to an improper repurchase demand; by inquiries from state licensing agencies and lending counterparties arising from Citizens' repurchase demand and this dispute, which Mortgage Link has been required to respond to at the expense of time, money, and

internal resources; and by harm to its business reputation and standing with regulators, investors, and counterparties.

## COUNT I – BREACH OF CONTRACT INCLUDING THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

31. Mortgage Link repeats and incorporates by reference the allegations of Paragraphs 1 through 30 of this Counterclaim as if fully set forth herein.

32. The CLPA is a valid and enforceable contract between Mortgage Link and Citizens.

33. Implied in the CLPA, as in every contract, is a covenant of good faith and fair dealing, which obligates each party to refrain from doing anything that will injure, destroy, or impair the right of the other party to receive the fruits and benefits of the contract, and which requires a party vested with contractual discretion to exercise that discretion reasonably and in a manner consistent with the parties' reasonable expectations, not arbitrarily, capriciously, or as a pretext to obtain an advantage the discretion was never intended to confer.

34. By its express terms, Section 8 of the CLPA confines Citizens' repurchase authority to circumstances involving a defect or deficiency that "existed on or before purchase of the Mortgage Loan by Buyer" or that "arose after purchase as a result of an occurrence or omission on or before the purchase." Section 8 further provides that a repurchase demand "shall not be affected by any modification of the Mortgage Loan in conformity with any governmental modification program," reflecting the parties' agreement that repurchase is intended to address defects and impairments solely attributable to the loan as originated and sold by Mortgage Link, not impairments introduced by Citizens' own servicing conduct after the sale.

35. Section 8's alternative remedy, indemnification "in lieu of" repurchase," is expressly confined to the same Section 8(a) through 8(g) predicates, each of which requires a defect or deficiency existing at, or attributable to an occurrence or omission on or before, the purchase of the loan. Section 10 similarly indemnifies Citizens only against losses "arising out of" Mortgage Link's own misrepresentations, breaches, acts, omissions, or noncompliance. Neither

provision authorizes Citizens to recover for losses caused by its own post-purchase servicing conduct, nor does the CLPA's definition of "Repurchase Price" include costs Citizens generated through its own misconduct rather than costs "incurred by Buyer in connection with the Mortgage Loan."

36.     The material impairment of the Sagnia Loan on which Citizens' repurchase demand rests did not exist on or before the Purchase Date and did not arise from any occurrence or omission on or before the Purchase Date. It arose exclusively from Citizens' own unilateral conduct more than two years after purchase: Citizens' gratuitous and unauthorized insertion of bankruptcy-discharge language into the Sagnia Loan modification, releasing the borrower from personal liability despite the absence of any bankruptcy discharge. That conduct was not required or occasioned by any governmental modification program and was not in conformity with one. Citizens' demand that Mortgage Link repurchase the Sagnia Loan on account of this self-created impairment falls outside the express scope of Section 8 and constitutes a breach of the CLPA.

37.     Citizens breached the CLPA including the implied covenant of good faith and fair dealing through, among other things:

a.  a systematic and improper practice of releasing borrowers from personal liability and inserting bankruptcy-discharge language into loan modifications for borrowers who never filed for bankruptcy;

b.  the unilateral and gratuitous discharge of the Sagnia borrower's personal liability and material alteration of the Sagnia Loan more than two years after the Purchase Date, thereby creating, through its own post-purchase conduct, the very impairment for which it now seeks repurchase;

c.  invoking Section 8's repurchase mechanism for an impairment that did not exist on or before the Purchase Date and did not arise from any occurrence or omission on or before the Purchase Date, contrary to the express limits of that provision;

d. demanding, in the alternative, that Mortgage Link indemnify Citizens under Sections 8 and 10 of the CLPA for losses caused in whole or in part by Citizens' own servicing conduct, notwithstanding that neither provision contains any clear and unequivocal undertaking by Mortgage Link to indemnify Citizens against the consequences of Citizens' own acts and omissions;

e. doing so arbitrarily and unreasonably, and in a manner inconsistent with the CLPA's objective of limiting Mortgage Link's repurchase and indemnity exposure to genuine defects attributable to the loan as originated and sold; and

f. as a pretext to shift onto Mortgage Link the financial consequences of Citizens' own self-inflicted servicing error.

38. Citizens' conduct was arbitrary, unreasonable, and contrary to Mortgage Link's reasonable expectations under the CLPA, and deprived Mortgage Link of the benefit of its bargain.

39. As a direct and proximate result of Citizens' breach of the CLPA and the implied covenant of good faith and fair dealing, Mortgage Link has suffered and will continue to suffer damages in an amount to be determined at trial.

40. Mortgage Link is entitled to recover its attorneys' fees, costs, and expenses incurred in responding to Citizens' improper repurchase and indemnification demands and in defending and prosecuting this action, pursuant to Section 22 of the CLPA.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaim-Plaintiff The Mortgage Link, Inc. respectfully requests that this Court:

A. Enter judgment in favor of Mortgage Link and against Citizens on all counts of the Complaint, and dismiss the Complaint with prejudice;

B. Enter judgment in favor of Mortgage Link and against Citizens on Mortgage Link's Counterclaim;

C. Award Mortgage Link compensatory damages in an amount to be determined at trial;

20

D.  Award Mortgage Link its costs, expenses, and attorneys' fees to the extent permitted by the CLPA and applicable law;

E.  Award Mortgage Link pre- and post-judgment interest at the maximum rate allowed by law; and

F.  Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Mortgage Link demands a trial by jury on all issues so triable.

Dated: July 7, 2026

Respectfully submitted,

THE MORTGAGE LINK, INC.
By its attorneys,

/s/ *Stacy W. Thomsen*
Stacy W. Thomsen, Bar No. 10342
DARROWEVERETT LLP
1 Turks Head Place, Suite 1200
Providence, RI 02903
sthomsen@darroweverett.com

Paul Levin (admitted pro hac vice)
Lauren Gibbs (admitted pro hac vice)
LEVIN MIGDAL & GIBBS LLP
11150 Santa Monica Blvd., Suite 1670
Los Angeles, CA  90025
paul@lmgllp.com
lauren@lmgllp.com

## <u>CERTIFICATE OF SERVICE</u>

I, Stacy W. Thomsen, hereby certify that on this 7th day of July, 2026 the foregoing Answer and Counterclaim was filed via the Court's electronic filing system and on this date was served electronically through ECF upon plaintiff's counsel of record:

Geoffrey W. Millsom
ADLER POLLOCK & SHEEHAN, P.C.
100 Westminster St., 16th Floor
Providence, RI 02903
Gmillsom@apslaw.com

/s/ *Stacy W. Thomsen*

22